[No. 447. Decided June 23, 1892.]

THE STATE OF WASHINGTON, *Respondent*, v GEORGE W. CAREY, *Appellant*.

APPEAL—CERTIFICATE TO STATEMENT OF FACTS—CONSTITUTIONAL LAW—RIGHT TO PRACTICE MEDICINE—HOW MISDEMEANOR CHARGED—ARREST OF JUDGMENT.

The certificate of the trial judge to a statement of facts that it contains all the testimony on which the cause was tried below, and that certain papers attached to the statement of facts are true and correct copies of the papers writing used on the trial of said cause, is insufficient under the provisions of Code Proc. § 1423, requiring the judge's certificate to show that the statement contains all the material facts in the cause.

The "act to regulate the practice of medicine and surgery in the State of Washington," etc. (Laws of 1889–90, p. 114), providing that thereafter no person should be licensed to practice medicine except after examination by the state medical examining board to be appointed by the governor, is not in violation of the provisions of either the state or United States constitutions, as such statute is an exercise of police power inherent in the state.

Under the provisions of "an act to regulate the practice of medicine and surgery in the State of Washington, and to license physicians and surgeons, to punish all persons violating the provisions of this act," etc. (Laws 1889–90, p. 114), an information or complaint against a person for practicing without a license is defective unless it charge him or her with appending "the letters M. D. or M. B. to his or her name, or for a fee" prescribing, directing or recommending "for the use of any person (naming such person) any drug or medicine or agency for the treatment, care or relief of any wound, fracture, or bodily injury, infirmity or disease." (HOYT, J., dissents.)

Under § 1107, Code, providing that judgment may be arrested when "the facts as stated in the indictment do not constitute a crime or misdemeanor," the rule of aider by verdict does not apply to such a defect. (HOYT, J., dissents.)

*Appeal from Superior Court, Spokane County.*

Information against George W. Carey, charging him, on the 14th day of July, 1891, with practicing medicine without having first obtained the license required by law. From a judgment of conviction defendant appeals.

*Jones & Voorhees,* for appellant.

*W. C. Jones,* Attorney General, *S. G. Allen,* Prosecuting Attorney, and *Turner, Graves & McKinstry,* for The State.

The opinion of the court was delivered by

DUNBAR, J.—Respondent moves to strike from the record the document purporting to be a statement of facts, because the said statement is not certified as required by law. The certificate of the trial judge is that the statement contains all the testimony on which the cause was tried below, and that certain papers, attached to the statement of facts, are true and correct copies of the papers writing used on the trial of said cause in said superior court." The law requires that the certificate of the judge must show that the statement contains all the material facts in the cause or proceeding. See § 1423, Code Proc. This certificate evidently falls short of the requirement of the law. There may be other material facts in the case beside the testimony; one of which might be the ruling of the court on testimony that was excluded, beside many others, which might be enumerated. The motion to strike must be sustained.

This leaves the case to be considered here on the sufficiency of the complaint, a motion having been made in arrest of judgment, on the ground—(1) Of the unconsti-

tutionality of the law under which the defendant was prosecuted; and, (2) that the facts stated in the complaint do not constitute a crime or misdemeanor, in that the offense sought to be charged is not sufficiently described, and that said complaint is too vague, indefinite and uncertain.

It is urged, in support of this position, that the law under which this prosecution is urged, is obnoxious to § 12 of art. 1 of the constitution of the State of Washington, which is as follows:

" No law shall be passed, granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens or corporations."

The contention of the appellant is, that the law under consideration is unequal within the purview of the constitutional provision, because—(1) The governor alone furnishes the test of the qualifications of the nine physicians comprising the returning board by the arbitrary exercise of the appointing power; (2) that the nine physicians comprising the board are not subject to an examination or to the payment of the examination fee of ten dollars required of applicants for examination, and that, consequently, privileges and immunities are, by this law, accorded to a certain portion of that class engaged in practicing medicine and surgery in the State of Washington which are not on the same terms equally accorded to all citizens belonging to such class. We think the law in question affords no substantial basis for these objections. From the very necessities of the case, the test of the qualifications of the examining board in the first instance must arbitrarily rest somewhere. This is true of every examining board in every department of the government, and to deny the right of the legally appointed tribunal to thus arbitrarily exercise this discretion, is practically to deny the right of the state to enact and enforce the law. In this instance

the legislature has invested the governor with this power of selection. There might possibly be something in the second proposition of appellant if it were conceded that his premises were correct, but we are unable to find anything in the act which warrants the conclusion that the members of the examining board are exempt from any of the burdens which are imposed upon other physicians who desire to practice medicine and surgery in the state. The fact that a person who practices medicine in the state is a member of the board, will not release him from the necessity of obtaining the license and paying the fee required A majority of the board may grant the license, and it can as consistently be granted to a member of the board as to anyone else.

It is also contended by the appellant that the law is in violation of § 2 of article 4 of the constitution of the United States, which provides that " citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states," and of § 1 of the 14th amendment of the constitution of the United States, which provides that no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. The right of the legislature to enact a law of the character of the one in question is founded upon the police power of the state, and the scope of this power has been the subject of much controversy, and the term has been variously defined by courts and text writers. It is defined by the supreme court of Illinois, in the case of *Lake View v. Rose Hill Cemetery*, 70 Ill. 192, as—

"That inherent and plenary power in the state which enables it to prohibit all things hurtful to the comfort, safety and

Many definitions have been announced by the courts, but the above, it seems to us, is so terse and comprehensive that we need look no farther for a definition.  Under our form of government, especially, all the personal liberty possibly consistent with the general welfare is conceded to the individual and, while, as a general proposition, it is doubtless true that any citizen has a right to pursue any lawful calling, yet, in respect to certain occupations not in themselves unlawful, this right is necessarily subject to legislative restrictions from considerations of public policy.  In the profession of medicine, as in that of law, so great is the necessity for special qualifications in the practitioner, and so injurious the consequences likely to result from the want of it, that the power of the legislature to prescribe such reasonable conditions as are calculated to exclude from the profession those who are unfitted to discharge its duties cannot be doubted.  *Hewitt v. Charier*, 16 Pick. 353; *Wright v. Lanckton*, 19 Pick. 288; Cooley, Const. Lim., p. 745.

The practice of medicine and surgery is a vocation that very nearly concerns the comfort, health and life of every person in the land.  Physicians and surgeons have committed to their care the most important interests, and it is an almost imperious necessity that only persons possessing skill and knowledge should be permitted to practice medicine and surgery.  For centuries the law has required physicians to possess and exercise skill and learning, for it has mulcted in damages those who pretend to be physicians and surgeons who have neither learning nor skill.  It is, therefore, no new principle of the law that is asserted by our statute, but if it were it would not condemn the statute, for the statute is an exercise of police power inherent in the state.  It is, no one can doubt, of high importance to the community that health, limb and life should not be left to the treatment of ignorant pretenders and charlatans.

It is within the power of the legislature to enact such laws as will protect the people from ignorant pretenders, and secure them the services of respectable, skilled and learned men, although it is not within the power of the legislature to discriminate in favor of any particular school or medicine.    When intelligent and educated men differ in their theories the legislature has no power to condemn the one or approve the other, but it may require learning and skill in the school of medicine which the physician professes to practice.    *Eastman v. State,* 109 Ind. 278, 58 Am. Rep. 400; *White v. Carroll,* 42 N. Y. 161, 1 Am. Rep. 503.

Our statute does not undertake to discriminate between rival or different schools of medicine, nor can we see that it invades or abridges any citizen's constitutional right. No one is proscribed or prevented form practicing medicine. All that is required of the applicant is that he shall possess the necessary qualifications, and the test of qualification is prescribed by the law.    The test may not be the best that could have been devised; it may be exceedingly imperfect and faulty, and in some respects we think it is, as it is difficult to see how a practitioner's qualifications can be affected by the mere accident of his residence in the state at the time of the passage of the law, or why the community should not be protected from resident as well as nonresident charlatans and quacks.    Yet, conceding the right of the legislature to legislate upon the subject, the wisdom of the act, its reasonableness or unreasonableness is a question for legislative discretion, and not for judicial determination.    Judge Cooley says, in his work on Constitutional Limitations (5th ed., page 201):

"The judiciary can only arrest the execution of a statute when it conflicts with the constitution.    It cannot run a race of opinions upon points of right, reason and expediency with the lawmaking power."

As sustaining the theory that the qualification of resi-

dence does not affect any constitutional right, we cite a decision of our Territorial Supreme Court, viz., the case of *Fox v. Territory*, 2 Wash. T. 297; *State v. Van Doran*, 109 N. C. 864; *Dent v. West Virginia*, 129 U. S. 121; *People v. Phippin*, 70 Mich. 6. The law sustained in the last case cited was much more objectionable than the one in question, for, while it exempted those who had practiced medicine in Michigan for a period of five years immediately preceding the law, it prohibited all others who had not received a diploma from some medical college, no board of examination being provided, while our statute excludes no one who is actually qualified, and who is willing to submit himself to the examination prescribed by law; and to guard against any arbitrary or captious action of the examining board the law provides for an appeal to the courts of justice, where a license is refused or revoked. We are of the opinion that the law is not in conflict with any constitutional right, and, therefore, it must be sustained.

We will next notice the objection that the facts stated in the complaint do not constitute a crime or misdemeanor. The body of the complaint in question is as follows:

"Comes now C. S. Penfield, who, after being first sworn in due form of law, charges G. W. Carey with the crime of misdemeanor committed as follows: That the said G. W. Carey on the 14th day of July, 1891, in the city and county of Spokane and State of Washington, did then and there unlawfully practice medicine with the State of Washington without having first obtained a license provided for in an act entitled 'An act to regulate the practice of medicine and surgery in the State of Washington, and' to license physicians and surgeons; to punish all persons violating the provisions of this act, and to repeal all laws in conflict therewith, and declaring an emergency,' contrary to the form of the statutes," etc.

Sec. 8 of the act alluded to in the complaint, after pro-

viding that any person who practices medicine or surgery within this state without first obtaining the license provided for in the law, shall be fined in a certain sum, provides further that "any person shall be regarded as practicing within the meaning of this act who shall append the letters M. D. or M. B. to his or her name, or for a fee prescribe, direct or recommend for the use of any person any drug, or medicine or agency for the treatment, care or relief of any wound, fracture or bodily injury, infirmity or disease." It is argued by the respondent that this is not a definition of the crime, but is simply an enumeration by statute of the probative facts which need not be alleged in the complaint, but we think it was the intention of the legislature to define the crime by the use of the language quoted, and that it would be a defense to an indictment under this act to prove that the party charged had neither appended to his name the prescribed letters or for a fee prescribed, etc. Or to state it affirmatively, it is necessary to allege and prove the commission of one of these acts to justify a conviction. This is a crime not known to the common law, it is purely statutory, and if the statute has failed to define it, it is not defined at all, and the defendant is called upon to answer to an undefined crime where no particular act constituting the crime is charged. To meet this objection, it is contended by the respondent that everybody knows what the term "practicing medicine" means. Every person may know what his particular idea of practicing medicine means, but one person's idea as to what it means may differ from another's; it may as well be claimed that everybody knows what murder means, or theft, or arson, but it will not be claimed for a moment that an indictment charging a person with having, on a certain day and at a certain time, committed the crime of murder, or theft, or arson, without any further description of the crime, would be sufficient, and

yet these are terms with a well defined and well understood meaning compared with the term "practicing medicine." The fact that one is a common law crime, and the other is statutory, cannot affect the defendant's right to be informed of the precise nature of the offense with which he is charged, so that he may be enabled to intelligently prepare his defense. In this instance the defendant was compelled to deny a conclusion of law rather than a statement of fact. It is urged by the respondent that it is sufficient in an indictment for a statutory crime to charge the crime in the language of the statute. This proposition we are not inclined to controvert, but the complaint in this instance does not meet the requirements of the proposition stated. Bishop on Criminal Procedure lays down the rule thus in § 611:

" Where a statute defines the offense which it creates, it is ordinarily adequate, while nothing else will in any instance suffice, to charge the defendant with all the acts within the statutory definition, substantially in the words of the statute, without further expansion."

So that it will be seen that if the theory of the respondent be true, that the statute in this instance does *not* define the crime, the rule limiting the indictment to the statutory words does not apply. For it only applies where the statute *does* define the offense which it creates, and if in this case the statute does define the crime, then, certainly the complaint falls short of the requirements, for it does not pretend to charge the defendant with the commission of the acts constituting the crime, viz.: the signing of the letters M. D. or M. B. to his name, or prescribing for a fee. The supreme court of the United States, in *United States v. Simmons*, 96 U. S. 360, in quoting the proposition stated by Bishop, says:

"But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused

must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defense, and plead the judgment as a bar to any subsequent prosecution for the same offense. An indictment not so framed is defective, although it may follow the language of the statute."

And this principle runs through all the cases, viz., that the indictment must be so specific in the description of the charge that the defendant will be able to avail himself of his acquittal or conviction for protection against a further prosecution for the same cause. Supposing this defendant had seen fit to plead guilty to the indictment, and had paid the fine imposed, and had afterwards been indicted for practicing medicine on the same day, there could have been nothing in the record to show that it was not for the same offense, and no plea in bar could possibly have been made for there would have been no way to determine that fact unless it be concluded that a man cannot practice medicine but once in a given day, which is a conclusion unfortunately not warranted by the common experience of mankind. If defendant Carey practiced medicine on that day by prescribing for a fee for somebody, that fact should have been stated with the name of the person for whom he prescribed. It is no hardship on the state to be held to this particularity, and it is nothing more than common justice that the defendant should know the particular unlawful acts he is charged with committing. In fact, outside of the authority of the cases cited, and the great weight of authority is opposed to sustaining this kind of an indictment, it seems to us that the requirements of our statute are not met by this indictment, for while our statute happily does away with many of the technical refinements which needlessly hampered and retarded the administration of justice under the common law practice, it has not gone to the other extreme of forcing a man to trial without informing him of the crime he is charged with committing. But it has substituted for such

technical refinements the simplicity of a statement of facts. The code requires that the indictment *must* contain: *First,* The title of the action, specifying the name of the court in which the indictment is presented, and the name of the parties; *second,* a statement of the acts constituting the offense in ordinary and concise language, etc., *not the name of the offense, but a statement of the acts constituting the offense.* These are mandatory provisions, and the second requirement of the "statement of acts constituting the offense" is just as important and essential as the first requirement that the indictment must contain the title of the action and the name of the parties. There is no room for the construction of this statute, the language is plain and unequivocal, and tested by this statutory requirement the complaint in this case must fall.

It is, however, contended by the respondent that even admitting the complaint to have been bad as against a demurrer the defect was cured by the verdict, the objection in this case having been made by motion in arrest of judgment. On this proposition many cases were cited both by the appellant and respondent, but on this proposition also the provisions of our own local laws must not be lost sight of in an investigation of reported cases. Sec. 1107. of the Code is as follows:

"Judgment may be arrested, etc., for the following causes: (1) No legal authority in the grand jury to inquire into the offense charged, by reason of its not being within the jurisdiction of the court. (2) That the facts as stated in the indictment do not constitute a crime or misdemeanor."

It would seem that if any effect whatever is to be given to the plain provisions of the statute, that the mere citation of this law is sufficient to determine this controversy. The right to demur to the complaint could not be more plainly bestowed on the defendant than the right to arrest the judgment where the facts stated in the indictment do not con-

stitute a crime or misdemeanor.    Whether based on good
or bad reasoning, this is a right vouchsafed the defendant
by the law, and the court has but one duty to perform, and
that is to see that the law is enforced.

The judgment in this case is reversed, and the cause re-
manded to the lower court with instructions to proceed in
accordance with this opinion.

Stiles, J., concurs.

Anders, C. J.—As I entertain some doubts as to the
constitutionality of the law upon which this prosecution is
founded, I do not desire to be understood as expressing an
opinion on that question; but I concur in the judgment be-
cause I think the complaint is insufficient.

Hoyt, J. (*dissenting*).—To the complaint filed in this
action defendant pleaded not guilty, and trial was had on
the merits.    After such trial and verdict had thereon, de-
fendant for the first time attacks the indictment for in-
sufficiency.    With the conclusions of the majority of the
court in sustaining such attack I am unable to agree.
When aided by the liberal rule of construction commanded
by our statute, and further aided by the rule for the inves-
tigation of pleadings after verdict, I think the indictment
sufficient.    The judgment should be affirmed.

Scott, J., concurs.