[No. 52461–1. En Banc. March 5, 1987.]

COSRO, INC., ET AL, *Appellants,* v. THE LIQUOR CONTROL BOARD, *Respondent.*

*Rovai, Miller, Foley, Orlando & Larkin,* by *Robert L. Rovai,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *John G. Hennen, Senior Assistant,* for respondent.

DURHAM, J.—Distributors of California Cooler have challenged the manner in which their product is taxed. The Washington State Liquor Control Board currently applies the wine tax to the entire volume of a California Cooler, even though roughly 50 percent of that product is a mixture of water, fruit juices and sugar. The distributors argue that the wine tax should only be applied to 50 percent of a California Cooler's volume because only 50 percent of it is wine. The trial court held that the tax was properly applied and dismissed the distributors' complaint by summary judgment. We hold that the California Cooler Company, by intermingling grape wine with other liquids, has created a new product which qualifies as wine in its own right under the statutory definition. Thus, the entire volume of a California Cooler is wine and is subject to the wine tax. We affirm the trial court's judgment.

The facts can be quickly summarized as follows. The California Cooler Company manufactures its product by preparing a mixture of carbonated water, fruit juices (lemon, lime, pineapple and grapefruit), fructose, citric acid and natural flavors, and combining it with an approximately equal amount of white wine. The alcohol content by volume is always between 4.5 and 7.0 percent.

California Coolers are shipped to distributors in Washington, at which point they become subject to this state's taxation. Wines sold to Washington wholesalers are taxed at 21.67 cents per liter.[1] The Board determined that California Cooler was a wine and accordingly collected the full 21.67 cents for every liter of California Cooler sold.

---

[1]The first paragraph of RCW 66.24.210 sets the tax at 20.25 cents per liter, and the additional tax called for in the second paragraph raises the total tax per liter to 21.67 cents.

California Cooler distributors challenged this method of taxation in the Superior Court for Thurston County. The distributors sought an injunction against continued tax at the current rate and also a refund for the past tax overassessments, alleged to amount to over $1 million. The trial court held that the tax was properly applied and dismissed the distributors' complaint by summary judgment.

## STATUTORY DEFINITION OF "WINE"

The threshold issue in this case concerns the definition of "wine". The distributors' argument that California Cooler is overtaxed because it only contains 50 percent wine is unpersuasive if a California Cooler itself is properly classified as a wine. The Washington liquor act, RCW Title 66, defines "wine" as follows:

> [A]ny alcoholic beverage obtained by fermentation of fruits [grapes, berries, apples, et cetera] or other agricultural product containing sugar, to which any saccharine substances may have been added before, during or after fermentation, and containing not more than twenty–four percent of alcohol by volume . . .

RCW 66.04.010(34).

California Coolers satisfy this definition. First, a California Cooler contains between 4.5 and 7.0 percent alcohol by volume, qualifying it as an alcoholic beverage containing less than 24 percent alcohol. Second, the wine component of a California Cooler is obtained by fermenting grapes. Finally, "saccharine substances" are added after the grapes have completed fermentation. The 50 percent mixture of water, fruit juices, fructose, citric acid and flavoring is a saccharine solution due to its high sugar content.[2] Fructose itself is a sugar[3] and fruit juices also contain sugars.[4] Putting these elements together, we have an alcoholic bev-

---

[2]"Saccharine" is defined as "1 a: of, relating to, or of the nature of sugar b: yielding or *containing* sugar . . ." (Italics ours.) *Webster's Third New International Dictionary* 1995 (1981).

[3]"Fructose" is defined as "a ketose sugar". *Webster's Third New International Dictionary* 915 (1981).

erage obtained by fermentation of grapes, to which a saccharine solution has been added after fermentation, containing less than 24 percent of alcohol by volume. A California Cooler, therefore, is a wine and is properly taxed at the rate of 21.67 cents per liter.[5] RCW 66.24.210.

Two theories of statutory interpretation provide further support for our decision. First, substantial weight is to be given to an agency's interpretation of a statute when that agency is charged with administering it. *Clark v. Horse Racing Comm'n,* 106 Wn.2d 84, 88, 720 P.2d 831 (1986); *Backlund v. Board of Comm'rs,* 106 Wn.2d 632, 638, 724 P.2d 981 (1986); *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983). The Board is charged with administering the provisions of the liquor act, RCW 66.08.020; hence we are to give substantial weight to the Board's determination that California Coolers qualify as "wine". Second, the liquor act is to be liberally construed to accomplish "the protection of the welfare, health, peace, morals, and safety of the people of the state . . ." RCW 66.08.010. A liberal construction would include California Coolers within the definition of "wine".

Finally, the taxation scheme proposed by the distributors

---

[4]For example, fructose is present in fruit juices. *See Webster's Third New International Dictionary* 915 (1981).

[5]The distributors have also argued that California Cooler is not a wine because it does not meet the definition of "grape wine" in the Board's regulations. *See* WAC 314–24–003(2). This regulation, however, has no bearing on the issue of California Cooler's status as wine. The regulation does not purport to define the scope of the term "wine", but rather takes the statutory definition of wine and subdivides it into various classes and types of wines. How a California Cooler fits into these subclassifications of wines is irrelevant once it is determined to be a wine under the statute. The regulations cannot in any way change that statutory definition, for "an agency does not have the power to promulgate rules that amend or change legislative enactments." *Green River Comm'ty College v. Higher Educ. Personnel Bd.,* 95 Wn.2d 108, 112, 622 P.2d 826 (1980), *modified,* 95 Wn.2d 962, 633 P.2d 1324 (1981). Thus, WAC 314–24–003 is irrelevant to the main issue in this case, as are the distributors' arguments about the Board's authority to promulgate that regulation.

fails because the Board does not have authority to impose a pro rata wine tax. Nothing in the liquor act allows the Board to classify a single product as partially within one category and partially without. Rather, the liquor act requires the Board to determine if a product is liquor, and if so, whether it also qualifies as one of liquor's four subcategories: alcohol, spirits, wine or beer. *See* RCW 66.04-.010(15). There is no provision in this analytical scheme for partial classifications. Indeed, classification of a product as partially wine would render doubtful the application of the many provisions in the liquor act which apply only to wines.[6] Recognizing this problem, the Board has never classified a product as being partially subject to the wine tax. We conclude that the Board is correct in this interpretation.

Contrary to the assertions of the distributors, holding that California Cooler is a wine does not render it a prohibited substandard or imitation wine. Regulations prohibit the sale of "imitation" wines, which include "[a]ny wine made from a mixture of water with residues remaining after thorough pressing of grapes . . ." WAC 314–24–006(1)(b). However, wine coolers are made by mixing water (and other items) and wine, not water and residues. Regulations also prohibit the sale of "substandard" wines, including "[w]ine of any class or type containing added water, or sugar and water solution, in excess of the quantities expressly authorized for standard wine made from the same kind or kinds of materials as prescribed in [WAC 314–24–003]." WAC 314–24–006(2)(d). However, California Cooler is not a substandard wine. WAC 314–24–003 does not limit the amount of water or sugar which wines like California Coolers must contain.[7]

---

[6]For example, beer and wine are the only liquors that can be sold by retail outlets such as grocery stores. *See* RCW 66.24.360, .370. All other liquors must be sold through State liquor stores. *See* RCW 66.16.010, .030. There are no provisions for how a product containing 50 percent wine can be sold.

[7]The Board classifies California Cooler as a "specialty wine" under WAC 314–

In summary, we hold that a California Cooler meets the statutory definition of "wine", and thus is subject to full taxation as a wine. The distributors have also argued, however, that the statutory classification of wine coolers as wine violates their constitutional rights to equal protection and uniform taxation. We now turn to those arguments.

ARGUMENTS UNDER THE CONSTITUTION

A

Equal Protection

The distributors argue that the present classification, subjecting wine cooler distributors to double the taxation of wine distributors, violates their right to equal protection under the laws. The federal constitution provides that the states shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. 14, § 1. The Washington Constitution furnishes a similar protection: "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." Const. art. 1, § 12. The requirements of this "privileges or immunities" clause "are in most cases at least as stringent as those of the federal equal protection clause. Ordinarily, inconsistency with one necessarily implies inconsistency with the other." (Citations omitted.) *Petersen v. State*, 100 Wn.2d 421, 444, 671 P.2d 230 (1983). In the present case, the analysis under each constitution is the same.

 Equal protection analysis depends upon the level of judicial scrutiny employed. Because the characterization of wine coolers does not affect fundamental rights or create a suspect classification,[8] we will submit the statutory defini-

---

24-003(2)(w), and that regulation does not limit a specialty wine's water or sugar content.

[8]"Fundamental rights" are those "explicitly or implicitly guaranteed by the Constitution", *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-34, 36

tion of "wine" to only minimal judicial scrutiny. *Petersen,* at 444. *See also Weissinger v. White,* 733 F.2d 802, 806 (11th Cir. 1984) ("federal equal protection challenges to state tax laws are reviewed with a minimal level of scrutiny"); *Robinson Protective Alarm Co. v. Philadelphia,* 581 F.2d 371, 378 n.15 (3d Cir. 1978) (economic, nonsuspect classifications in tax codes are subject to only minimal scrutiny). Under the minimal scrutiny analysis, a statute is presumed constitutional and the party challenging it has a heavy burden of proof. *Petersen,* at 445.

To show a violation of the equal protection clause, a party must first establish that the challenged act treats unequally two similarly situated classes of people. *See Jones v. Helms,* 452 U.S. 412, 423, 69 L. Ed. 2d 118, 101 S. Ct. 2434 (1981). The distributors have attempted to satisfy this requirement by arguing that wine cooler distributors have been disadvantaged by having to pay double the taxation of wine distributors. In response, the Board has pointed out that, in fact, all wine coolers are distributed by wine distributors. The Board claims that no separate class of wine cooler distributors exists. The distributors have not been able, or even attempted, to prove that such a separate class exists. Because the distributors have failed to satisfy their heavy burden of proving this element, we conclude that their equal protection argument is without merit. The equal protection clause simply is not violated when all wine distributors pay the same tax on wine coolers. Wine distributors have no cause for complaint under the equal protection clause when they have all been treated equally.

However, our rejection of the equal protection argument does not fully dispose of the distributors' arguments under the constitution. Not only does the constitution protect classes of people from dissimilar treatment under the equal protection clause, but our state constitution also requires that classes of property receive equal treatment when being taxed.

---

L. Ed. 2d 16, 93 S. Ct. 1278 (1973), while examples of "suspect classifications" include those based on race, nationality, or alienage. *Petersen v. State,* 100 Wn.2d 421, 444, 671 P.2d 230 (1983).

## B
## Uniform Taxation

Under the Washington Constitution, taxes are to be uniformly applied to the same class of property, Const. art. 7, § 1 (amend. 14), so that the burdens of taxation are uniformly distributed. *Bond v. Burrows*, 103 Wn.2d 153, 157, 690 P.2d 1168 (1984). The distributors contend that uniform taxation is not achieved when wine coolers are taxed at twice the rate of other wines. However, the constitutional requirement of uniformity of taxes applies only to property taxes; it does not apply to excise taxes. *Black v. State*, 67 Wn.2d 97, 100, 406 P.2d 761 (1965) (and cases cited therein). An excise tax is a tax on the right to use or transfer items, while a property tax is a tax on the items themselves. *High Tide Seafoods v. State*, 106 Wn.2d 695, 699, 725 P.2d 411 (1986). The wine tax is a tax placed on the sale of wine, RCW 66.24.210(1). Consequently, it is an excise tax and article 7, section 1 does not apply.

The trial court's judgment is affirmed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.

Reconsideration denied May 27, 1987.