[No. 29156-1-III.   Division Three.   March 15, 2012.]

*In the Matter of the Marriage of* DANIAL L. NEWLON, *Appellant*, and NICOLE L. ALEXANDER, *Respondent*.

*Mary E. Schultz* (of *Mary Schultz Law PS*), for appellant.
*Charles T. Conrad*, for respondent.

¶1 SWEENEY, J. — This appeal follows the tragic death of the parties' only child. In this postdissolution proceeding, the superior court exercised its jurisdiction based on its continuing authority to resolve postdissolution disputes and on the stipulation of the parties. The court ordered burial of the child's remains in Spokane. We conclude that the court had jurisdiction and that the order was a proper exercise of the court's constitutional authority to decide a matter in equity. We therefore affirm the judgment of the court.

## FACTS

¶2 Danial L. Newlon and Nicole L. Alexander (formerly Newlon) had a son, Trenton. He was born on January 12, 1995. Trenton died on July 15, 2008. The Newlons' marriage had been dissolved by a Spokane County decree of dissolution in 2000. The Honorable Linda Tompkins had presided over those dissolution proceedings. Mr. Newlon had the primary residential placement.

¶3 The parties disagreed on what to do with their son's remains. Counsel for both filed a joint "Stipulation Re Jurisdiction, Hearing and Judicial Assignment." Clerk's Papers (CP) at 270. And they stipulated to the jurisdiction of Spokane County Superior Court "for the purpose of determining the disposition of their son." CP at 270. They agreed to have a hearing:

> The Court has reserved July 30, 2008, at 1:30 p.m., to hear the parties' arguments in open court as to the disposition of Trenton's remains. . . . The parties shall prepare affidavits and/or declarations and briefs. The parties shall exchange their respective briefs and affidavits before 2:00 p.m. on Monday, July 28, 2008. . . . Only the parties and their respective counsel shall present testimony and argument at the hearing; there shall be no other witnesses before the Court.

CP at 271. They agreed that Mr. Newlon could move Trenton's remains to Tennessee, have a memorial service on July 31, 2008, and keep Trenton's remains until the court ruled on their motion. And they agreed "to be bound by Judge Linda Tompkins['] ruling as to the final disposition of Trenton's remains; provided, Petitioner expressly reserves the right to appeal any decision that permits the cremation of Trenton's remains." CP at 271.

¶4 The matter then proceeded to hearing on July 30, 2008, pursuant to the stipulation and agreement. Judge Tompkins commented on the sensitive nature of the dispute, the stipulation of counsel to no oral arguments, and the equitable nature of the dispute: "Because this matter is one essentially of almost pure equity I am prepared to provide a forum where the parties may be heard. I will administer an oath and I will listen very carefully to the sworn statements of the parties." Report of Proceedings (RP) (July 30, 2008) at 2. Mr. Newlon and Ms. Alexander provided sworn statements. Afterwards, the court spoke to the parties in camera and outside of each other's presence. No one objected to this. Judge Tompkins then ruled that Trenton not be cremated and that he be buried in a public cemetery in Spokane.

¶5  On August 10, 2009, Mr. Newlon moved to vacate the court's August 11, 2008 order. Judge Tompkins stepped aside because of Mr. Newlon's allegations of impropriety. And the Honorable Gregory Sypolt heard argument and denied the motion:

> [B]oth parties were represented by competent counsel at the time of the entry of the stipulation and at the time of the hearing. Well, at the time of the stipulation. And there additionally is the time factor the Court can't overlook. And it was just about a year after the order was signed when the motion to vacate was filed.
>
> . . . .
>
> Here we do have a stipulation. And I find very persuasive the fact that this was initiated by Mr. Newlon. And it's striking that Ms. Alexander at the time herself had to scramble to get counsel to respond to this matter. And, granted, I'm sure the parties felt, as might very reasonably be expected, a lot of stress at that particular time. Nonetheless, there was advice and input from counsel.

RP (June 18, 2010) at 25-26.

## DISCUSSION

¶6  Motions to vacate "are addressed to the sound discretion of the trial court, whose judgment will not be disturbed absent a showing of a manifest abuse of discretion." *In re Marriage of Burkey*, 36 Wn. App. 487, 489, 675 P.2d 619 (1984). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *In re Schuoler*, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986). We however review questions of law, including whether the court had jurisdiction, de novo. *In re Marriage of Kastanas*, 78 Wn. App. 193, 197, 896 P.2d 726 (1995).

¶7  CR 60(b) provides:

> [T]he court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:
>
> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

. . . .

(5) The judgment is void;

. . . .

(11) Any other reason justifying relief from the operation of the judgment.

Mr. Newlon argues that the trial court did not have subject matter jurisdiction and the court's order was therefore void. He also argues that the order should be set aside because of "irregularities." Br. of Appellant at 41.

¶8 Subject matter jurisdiction is "a tribunal's authority to adjudicate the type of controversy involved in the action." *Shoop v. Kittitas County*, 108 Wn. App. 388, 393, 30 P.3d 529 (2001), *aff'd*, 149 Wn.2d 29, 65 P.3d 1194 (2003).

¶9 RCW 68.50.010 recites that county coroners have "jurisdiction" over bodily remains under certain circumstances:

> The jurisdiction of bodies of all deceased persons who come to their death suddenly when in apparent good health without medical attendance within the thirty-six hours preceding death; or where the circumstances of death indicate death was caused by unnatural or unlawful means; or where death occurs under suspicious circumstances; or . . . where death apparently results from drowning, . . . stabs or cuts . . . is hereby vested in the county coroner, which bodies may be removed and placed in the morgue under such rules as are adopted by the coroner with the approval of the county commissioners, having jurisdiction, providing therein how the bodies shall be brought to and cared for at the morgue and held for the proper identification where necessary.

Mr. Newlon argues that this statute vests subject matter jurisdiction in coroners rather than the superior courts. Br. of Appellant at 17-18. Mr. Newlon's argument is premised on the proposition that the legislature must, or at least may, grant jurisdiction to the courts. Br. of Appellant at 16 (citing WASH. CONST. art. IV, § 1). He is mistaken. This is state court, not federal court. *Compare* U.S. CONST. art. III, § 2, cl. 1, *with*

WASH. CONST. art. IV, § 6; *compare Ins. Corp. of Ir., Ltd. v. Compagnie de Bauxites de Guinee*, 456 U.S. 694, 701-02, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) ("Federal courts are courts of limited jurisdiction."), *with State ex rel. Martin v. Superior Court*, 101 Wash. 81, 93-94, 172 P. 257 (1918) ("The superior courts of this state are courts of general jurisdiction.").

¶10 The Washington State Constitution grants the courts of this state: "The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide." WASH. CONST. art. IV, § 1. The state constitution specifically vests superior courts with jurisdiction in cases in equity, cases of divorce, and "in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." WASH. CONST. art. IV, § 6. Superior courts are courts of "general jurisdiction" and can therefore hear all legal and equitable matters unless those " 'powers have been expressly denied.' " *In re Marriage of Major*, 71 Wn. App. 531, 533, 859 P.2d 1262 (1993) (quoting *Martin*, 101 Wash. at 94).

¶11 The legislature may limit superior courts' jurisdiction in favor of other inferior courts. *Young v. Clark*, 149 Wn.2d 130, 133-34, 65 P.3d 1192 (2003) (citing *Moore v. Perrott*, 2 Wash. 1, 4, 25 P. 906 (1891)). Section 6 provides that superior courts have judicial powers when those powers are not "vested exclusively in some other court." WASH. CONST. art. IV, § 6. Sections 1 and 12 allow the legislature to create "inferior courts." WASH. CONST. art. IV, §§ 1, 12. Similarly, section 10 allows the legislature to create justices of the peace, but "jurisdiction granted by the legislature shall not trench upon the jurisdiction of superior or other courts of record." WASH. CONST. art. IV, § 10. There is no constitutional framework apart from sections 1, 6, 10, and 12 that would allow the legislature to create courts that are not inferior to superior courts. "It is axiomatic that a judicial power vested in courts by the constitution may not be

abrogated by statute." *James v. Kitsap County*, 154 Wn.2d 574, 588, 115 P.3d 286 (2005).

¶12  This constitutional framework ensures that "subject matter jurisdiction . . . cannot be whittled away by statutes" and thus "provides the foundation for an independent and coequal branch of state government." *Shoop*, 108 Wn. App. at 396. Unless a coroner is "some other court" or an "inferior court," subject matter jurisdiction cannot be vested in it at the expense of superior court. And, of course, it (the office of coroner) is not some other court.

¶13  RCW 68.50.010 recites that coroners have "jurisdiction of bodies of all deceased persons" who die under certain circumstances. But the word "jurisdiction" can have more than one meaning. And superior courts in this state have a specific and clear constitutional grant of authority—jurisdiction—over equitable disputes. WASH. CONST. art. IV, § 6. We will not read a legislative enactment as restricting that constitutional grant of authority because the legislature has no authority to do so. *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 415, 63 P.2d 397 (1936). Nor does it appear that it intended to do so. The court here then clearly had jurisdiction of this equitable dispute, and nothing in this legislative scheme of things changed that.

¶14  A "coroner" is not a judicial tribunal. The chapter conferring "jurisdiction of all bodies of deceased persons" deals with human remains. *See* ch. 68.50 RCW. The chapter limits one's ability to move, hide, sell, keep for a debt, or otherwise dispose of human remains. RCW 68.50.050, .140, .120, .130. It requires that human remains be buried or cremated. RCW 68.50.110. The chapter also gives the decedent's parents the right to control disposition of remains when the decedent has not made "prearrangement[s]." RCW 68.50.160(3)(d). A coroner may "hold an inquest upon [a] body" and may authorize dissection in those cases. RCW 68.50.100(1). The coroner must catalog personal effects belonging to decedents. RCW 68.50.040. He or she must meet with a decedent's family and discuss the findings

upon the family's request. RCW 68.50.105. And he or she must perform an autopsy at the written request of the Department of Labor and Industries. RCW 68.50.103. The statutory scheme's only provisions relating to conflict resolution, however, involve the courts. *See* RCW 68.50.015 (providing that the accuracy of a coroner's findings can be challenged), .102 (providing that a decedent's family may petition the court for an autopsy). Nothing in chapter 68.50 RCW suggests that coroners resolve disputes. They do not.

¶15 Mr. Newlon cites to *In re Inquest Into Death of Boston*[1] to argue that coroners are a court and that courts do not have jurisdiction to resolve disputes over human remains. Br. of Appellant at 21, 28. *Boston* merely holds that the Rules for Appeal of Decisions of Courts of Limited Jurisdiction do not allow appeal of an inquest decision where a district court judge is then appointed coroner. 112 Wn. App. at 122. *Boston* supports the notion that superior courts, and not coroners, have jurisdiction to decide disputes regarding remains. The court distinguished a coroner's inquest from a judicial proceeding. *See id.* at 118. It explained that an inquest "is not meant to be an adversary proceeding" and has results that "are not binding on anyone." *Id.* (citing *Miranda v. Sims*, 98 Wn. App. 898, 903, 991 P.2d 681 (2000)). Coroners are part of the executive branch and not judicial officers. *See id.* at 118, 122.

¶16 Mr. Newlon also contends that the superior court here, which was sitting as a family court, did not have subject matter jurisdiction because neither chapter 68.50 RCW nor chapter 26.09 RCW (governing family court) gives family court the right to order disposition of human remains. Br. of Appellant at 26. And he argues that it did not have subject matter jurisdiction because no "petition, application, complaint or motion was ever filed to 'commence' any interment action." *Id.* at 31. We disagree.

¶17 Even after a decree of dissolution, the superior court acting as family court has authority to resolve disputes

---

[1] *In re Inquest Into Death of Boston*, 112 Wn. App. 114, 47 P.3d 956 (2002).

between former spouses. *See In re Marriage of Langham*, 153 Wn.2d 553, 559-60, 106 P.3d 212 (2005) (addressing postdissolution motion to enforce property settlement based on a conversion theory); *In re Marriage of Angelo*, 142 Wn. App. 622, 639, 640, 175 P.3d 1096 (2008) (addressing consolidation of tort action against ex-husband with dissolution action after a decree of dissolution was filed).

¶18 *Langham* is helpful here. There, a dissolution decree awarded stock options to the wife, but the husband was ordered to hold the options in trust for the wife because the nontransferable options were only in his name. *Langham*, 153 Wn.2d at 556-59. The husband exercised the options, and the ex-wife moved for a judgment to be entered against him for conversion. *Id.* at 558. The court heard the motion on the family court motions docket, and the court entered judgment against the ex-husband based on documents. *Id.* at 560-61. The ex-husband argued, like Mr. Newlon argues here, that the family court lacked subject matter jurisdiction to decide a tort action because he did not have time to answer a complaint, get discovery, or have a jury trial. *Id.* at 559-60. The Supreme Court held that the family court had jurisdiction to enter judgment because it never lost jurisdiction:

> "Having before it at the outset a cause cognizable in equity, the court retain[s] jurisdiction over the subject matter and the parties to be affected by its decree for all purposes—to administer justice among the parties according to law or equity." *Yount v. Indianola Beach Estates, Inc.*, 63 Wn.2d 519, 524-25, 387 P.2d 975 (1964). . . . It . . . has the authority to use "any suitable process or mode of proceeding" to settle disputes over which it has jurisdiction, provided no specific procedure is set forth by statute and the chosen procedure best conforms to the spirit of the law. Indeed, "[w]hen the equitable jurisdiction of the court is invoked . . . whatever relief the facts warrant will be granted."

*Id.* at 560 (some alterations in original) (citation and internal quotation marks omitted) (quoting *Ronken v. Bd. of County Comm'rs*, 89 Wn.2d 304, 313, 572 P.2d 1 (1977)).

¶19 The procedural posture there is similar to what the court faced here. In both cases, the superior court had entered a decree and the parties had a postdecree dispute not contemplated by statute. Rather than filing a new action, they treated the dispute as a motion in the dissolution proceeding, as they were privileged to do. *Id.* at 560-61. Mr. Newlon argues, nonetheless, that no action was filed. None was necessary. The court had continuing jurisdiction to resolve just this kind of dispute. *Id.* at 560. And, indeed, the parties stipulated as much: "The court has reserved July 30, 2008, at 1:30 p.m., to hear the parties' arguments in open court as to the disposition of Trenton's remains." CP at 271.

¶20 No matter what the court's ruling on jurisdiction or the reasons therefore, jurisdiction remained a matter of law that we are obligated to review de novo. *Kastanas*, 78 Wn. App. at 197. The court had continuing jurisdiction in this postdissolution dispute and therefore properly denied Mr. Newlon's motion to vacate the order. The court's judgment was neither void nor "irregular." *James*, 154 Wn.2d at 588; *Langham*, 153 Wn.2d at 560; *In re Marriage of Furrow*, 115 Wn. App. 661, 673-74, 63 P.3d 821 (2003) (stating that the circumstances in which CR 60(b)(11) will grant relief must be "extraordinary" and " 'extraneous to the action of the court or questions concerning the regularity of the court's proceedings' " (quoting *In re Marriage of Yearout*, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985))).

¶21 We deny any requests for attorney fees. The stipulation of the parties does not provide for attorney fees, and the proceedings including this appeal are neither frivolous nor advanced without reasonable cause. RCW 4.84.185.

¶22 We affirm the judgment of the superior court.

KULIK, C.J., and KORSMO, J., concur.

Reconsideration denied April 24, 2012.