**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 15, 2021

*Gonzalez, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 15, 2021

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE FAMILY OF DAMARIUS BUTTS et al., | NO. 98985-1 |
| Respondents/Cross-Appellants, | |
| v. | |
| DOW CONSTANTINE et al., | |
| Appellants/Cross-Respondents. | Filed  July 15, 2021 |

STEPHENS, J.— Damarius Butts, Isaiah Obet, Charleena Lyles, and seven other people were shot and killed by law enforcement officers in King County in 2017. *Fatal Force: Police Shootings Database*, WASH. POST (last updated June 21, 2021), https://www.washingtonpost.com/graphics/investigations/police-shootings-database/ [https://perma.cc/2KUT-4QH8].  In response to community demands for greater police accountability, King County Executive (Executive) Dow Constantine issued a series of executive orders to reform the procedures for conducting coroner's

inquests—a type of death investigation the King County Charter requires whenever a law enforcement officer causes or contributes to someone's death. The King County Superior Court struck down those executive orders on various grounds, and nearly all parties appealed some aspect of that ruling. We accepted direct review.

Executive Constantine and the Inquest Administrator Michael Spearman argue the executive orders were a valid exercise of the powers granted to the Executive by the King County Charter and King County Code. Executive Constantine asks us to vacate the superior court's order and reinstate the executive orders.

The families of Butts, Obet, and Lyles (individually and collectively Families) argue state law requires more than Executive Constantine's recent reforms allow. Specifically, they argue the "Coroner's Act," ch. 36.24 RCW, requires that the involved officers be examined by the inquest jury and that the inquest jury be allowed to determine whether their relatives were killed by criminal means. The Families seek writs of mandamus to compel Executive Constantine and Administrator Spearman to comply with those requirements of state law.

Finally, four King County cities, the King County Sheriff's Office, and several individual law enforcement officers (the Law Enforcement Parties) argue the Executive's orders go too far. They claim that the Coroner's Act creates a narrow,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

fact-bound inquiry and that Executive Constantine's recent orders impermissibly broaden the inquest's scope and purpose. The Law Enforcement Parties seek to prevent coroner's inquests from proceeding under those orders and ask us to affirm the superior court's ruling.

Every party's arguments have some merit and all prevail to some degree. We hold that the Executive's authority to conduct coroner's inquests includes the power to establish the procedures by which those inquests are conducted, as long as those procedures are consistent with applicable state and county law. We therefore largely uphold Executive Constantine's recent reforms. But we strike the portions of the executive orders that the Families and the Law Enforcement Parties show conflict with state law, including those that would prevent inquest juries from fulfilling their duties under the Coroner's Act. The Families are correct that the law requires inquest juries be able to examine the involved officers and to decide whether those officers killed Butts, Obet, and Lyles by criminal means. Accordingly, we vacate the superior court's order and remand to grant in part the Families' petitions for writs of mandamus.

## RELEVANT FACTS

Law enforcement officers in King County shot and killed Damarius Butts, Isaiah Obet, and Charleena Lyles within a two-month period in 2017. Seattle Police

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

killed Butts on April 20. Auburn Police killed Obet on June 10. Seattle Police killed Lyles on June 18.

The King County Charter requires coroner's inquests be held whenever "an action, decision or possible failure to offer the appropriate care by a member of any law enforcement agency might have contributed to an individual's death." KING COUNTY CHARTER § 895. Per the inquest procedures in place at the time, Executive Constantine sent letters to the Honorable Donna Tucker, presiding judge of the King County District Court, requesting judges to preside over inquests into the deaths of Butts, Obet, and Lyles.

In December 2017, in response to growing community concern, Executive Constantine convened a six-member Inquest Review Committee (IRC) to propose reforms to King County's long-standing inquest procedures. The IRC found those procedures were largely perceived by community members as "favor[ing] law enforcement," "'lack[ing] compassion,' and . . . condescending to families" of those killed by police. Clerk's Papers (CP) at 707-08. The IRC proposed several reforms to improve King County's inquest process, including clarifying the purpose and scope of inquests, promulgating more robust procedural rules, allowing the inquest jury to make more meaningful observations "as a voice of the community," and improving the transparency of and better educating the public about inquests. CP at

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

704-05. The IRC proposed a draft executive order incorporating these and other changes to King County's inquest process.

Soon after, a coalition of law enforcement representatives and community advocates attempted to create an alternative proposal that would accommodate some of the law enforcement community's concerns with the IRC proposal. That coalition shared a draft compromise executive order with Executive Constantine's office but never reached a final agreement.

Meanwhile, Judge Tucker notified Executive Constantine that the King County District Court would no longer assign judges to preside over inquests. On the day he received Judge Tucker's letter, Executive Constantine placed the pending Butts, Obet, and Lyles inquests—along with two others—on hold until new inquest procedures could be adopted. No jurors had yet been requested, so none of those inquests had formally begun. *See BNSF Ry. Co. v. Clark*, 192 Wn.2d 832, 838, 434 P.3d 50 (2019) ("[T]he coroner must request a jury in order to begin an inquest.").

Nearly a year after placing the inquests on hold, Executive Constantine issued Executive Order PHL 7-1-2-EO (2018 EO), incorporating several of the IRC's proposed reforms and the coalition's suggested revisions. The 2018 EO provided for an inquest administrator to preside over inquests as the Executive's designee, significantly reduced the role of the prosecuting attorney, and expanded public

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

access to inquest proceedings, including by directing the inquest administrator to make video and audio recordings available online. The 2018 EO also allowed the chief law enforcement officer of the involved agency to provide limited testimony about police training and policies, permitted testimony from expert witnesses on whether the involved officers complied with such training and policies, and prohibited the issuance of subpoenas to compel the testimony of involved officers. Other portions of the 2018 EO maintained some long-standing practices, such as mandating a transparent process, providing for the exchange of discoverable materials, and barring the inquest jury from determining issues of fault or criminal or civil liability.

With the 2018 EO in place, Executive Constantine removed the hold from the pending inquests. In the late spring and early summer of 2019, Executive Constantine officially initiated the Butts, Obet, and Lyles inquests by requesting jurors from lists maintained by the King County Superior Court. Retired Superior Court and Court of Appeals Judge Michael Spearman was appointed as the administrator for all three inquests.

Administrator Spearman held a series of prehearing conferences in each inquest to facilitate discovery, establish the initial scope of the inquest, and address the parties' various motions. These conferences soon exposed a flaw in the 2018

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

EO: it conditioned the participation of involved officers' attorneys on the officers' willingness to participate in the inquest, but it did not define what it meant for the officers to participate. The Butts Family moved to condition the officers' attorneys' participation on the officers' willingness to testify at the inquest hearing, and Administrator Spearman denied that motion.

Two days before the Butts inquest was scheduled to begin, Executive Constantine issued Executive Order PHL 7-1-3-EO (2019 EO), which effectively overturned Administrator Spearman's ruling by clarifying that the officers' attorneys could participate only if the officers were willing to testify at the inquest. Otherwise, the 2019 EO is identical to the 2018 EO. *Compare* CP at 1502-13, *with* CP at 1515-26. The officers involved in Butts's death immediately moved to stay the inquest hearing, and Administrator Spearman granted the motion.

Before their inquest hearings could begin, the Butts and Obet Families filed separate petitions for writs of mandamus in the King County Superior Court. The Butts Family sought a writ compelling "Administrator Spearman . . . to summon and examine the law enforcement officers who killed Mr. Butts" using the subpoena authority in RCW 36.24.050. CP at 27-31. The Obet Family sought a writ compelling "Administrator Spearman and the Executive . . . to include within the scope of the inquest the question of whether or not the killing of Isaiah Obet was

7

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

with *criminal means* as required by RCW 36.24.070." CP at 1. The Lyles Family later intervened and petitioned for the same writs as the Butts and Obet Families.

Almost simultaneously, the city of Seattle sought writs of prohibition and review and declaratory relief to invalidate the executive orders in their entirety. The individual law enforcement officers soon filed their own suit, seeking essentially identical relief. The cities of Auburn, Federal Way, Kent, and Renton, and the King County Sheriff's Office moved to intervene, joined Seattle's and the officers' requests for relief, and sought further relief in the form of an order limiting inquests to those involving King County deputy sheriffs, staying all pending and potential inquests involving law enforcement officers, declaring some inquests time-barred, and limiting the use of expert witnesses. All these actions, along with the Families' petitions, were consolidated under a single case number.[1]

On the day before briefing was due in the superior court, Executive Constantine issued Executive Order PHL 7-1-4-EO (2020 EO). The 2020 EO made two significant revisions to the 2019 EO, which Executive Constantine argues render some of the Families' and Law Enforcement Parties' challenges moot. First, it eliminated the requirement that the involved officers had to testify in order to

---

[1] The city of Seattle voluntarily dismissed its claims before the superior court heard oral argument and is not a party before this court.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

participate through counsel. Second, it provided that involved officers could be subpoenaed to testify at the inquest hearing like any other witness.

The superior court heard oral argument in July 2020 and a month later issued an order denying all writ petitions and granting declaratory and injunctive relief to the Law Enforcement Parties. Executive Constantine and Administrator Spearman appealed. The Families cross appealed to seek their writs, while the cities and King County Sheriff's Office cross appealed to preserve two narrower requests for relief that the superior court did not address. The individual law enforcement officers did not appeal any portion of the superior court's order.

After the parties confirmed the trial court's order disposed of all claims of all parties, we granted direct review. At the request of the Families and individual law enforcement officers—whose positions are adverse despite the procedural posture of this appeal—we allowed those parties to submit additional briefing replying to each other's arguments. We also accepted briefs from Public Health amici, Community Organizations amici, and the Washington State Association of Counties, and we granted additional oral argument time.

## ANALYSIS

We first address Executive Constantine's threshold arguments that the issues presented by this case are beyond this court's constitutional authority to address,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

cannot be raised by the Families or the Law Enforcement Parties, or are otherwise not properly before us. These justiciability arguments mostly fail.

First, Executive Constantine argues policy choices about how to conduct coroner's inquests are discretionary and internal to the executive branch and thus cannot be examined in court without breaching the separation of powers. Executive Constantine relies heavily on our opinion in *Brown v. Owen*, where we declined to "referee disputes over parliamentary rulings" between a state senator and the lieutenant governor acting in his capacity as president of the state senate. 165 Wn.2d 706, 721, 206 P.3d 310 (2009). That decision, Executive Constantine claims, stands for the proposition that Washington courts cannot interfere with intrabranch functions, including executive orders establishing how executive branch employees conduct an executive branch function. Executive Constantine's argument misunderstands our precedent.

*Brown* involved an intrabranch dispute about an intrabranch function, in which a member and the presiding officer of the same legislative body disagreed over what that body's internal rules required. *Id.* Here, in contrast, the dispute is not confined to matters internal to a single body or branch of government: it is between the King County executive branch and the Families and the Law Enforcement Parties. And unlike the authority of the state senate to adopt its own

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

rules, which our constitution has "committed solely to the legislature," *Id.* at 722, the Executive's authority to direct how coroner's inquests are conducted is subject to other laws. More precisely, the Executive's power is constrained by what those laws permit. Even where the Executive enjoys broad discretion, it is entirely appropriate for Washington courts to decide whether the Executive's commands exceed lawful executive powers. This exercise of judicial authority sustains—not threatens—the separation of powers.

Second, Executive Constantine argues the Families and the Law Enforcement Parties lack standing to challenge the executive orders in court. Because the standing inquiry is inherent in the test for writs of mandamus, the Families need not establish standing apart from showing they are entitled to mandamus relief. *See* RCW 7.16.170 (authorizing mandamus relief "on the application of the party beneficially interested"); *Retired Pub. Emps. Council of Wash. v. Charles*, 148 Wn. 2d 602, 620, 62 P.3d 470 (2003) (*RPECW*) ("For purposes of standing under the mandamus statute, all that must be shown is that the party has a[ beneficial] interest in the matter beyond that of other citizens."). We therefore address the Families' "beneficial interest" on the merits below. *See infra* Section I.A.3.

The Law Enforcement Parties have established they have standing to challenge the executive orders under the Uniform Declaratory Judgments Act, ch.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

7.24 RCW. "'The basic test for standing is whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the [law] in question.'" *Lakehaven Water & Sewer Dist. v. City of Federal Way*, 195 Wn.2d 742, 769, 466 P.3d 213 (2020) (internal quotation marks omitted) (quoting *City of Seattle v. State*, 103 Wn.2d 663, 668, 694 P.2d 641 (1985)). To have standing under the Uniform Declaratory Judgments Act, "'a party must be within the zone of interests to be protected or regulated by the statute . . . [and] the party must have suffered an injury in fact.'" *Id.* (internal quotation marks omitted) (quoting *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 593-94, 192 P.3d 306 (2008)).

The Law Enforcement Parties have established they are within the zone of interests regulated by the executive orders and have alleged adequate injuries in fact. The challenged executive orders require or authorize the participation of the employing government department, its chief law enforcement officer, and the officers involved in the death being investigated. Besides providing testimony to the inquest jury, that participation includes producing discovery in the form of training records, policy manuals, officers' psychological records and disciplinary proceedings, and more. Those obligations carry economic costs the Law Enforcement Parties must bear, and we have long recognized that such costs can

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No.
98985-1

constitute an injury sufficient to establish standing. *See, e.g.*, *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004) (injury in fact can be "economic or otherwise").

Finally, Executive Constantine argues some challenges to the executive orders are moot. We agree. First, because the 2020 EO eliminated the requirement that the involved officers must testify in order to participate through counsel, Executive Constantine is correct that the challenge to the contrary provision in the 2019 EO is now moot. The Law Enforcement Parties counter that "'a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" Br. of Resp'ts Cities & King County Sheriff's Office at 70 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013)). Recognizing the risk of such gamesmanship, the United States Supreme Court has explained that "[v]oluntary cessation does not moot a case or controversy unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007) (second alteration in original) (quoting *Friends of Earth, Inc. v.*

13

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). In *Parents Involved*, the Court reasoned that the school district did not meet its "heavy burden" to show its decision to stop using the challenged policy rendered the case moot because "the district vigorously defend[ed] the constitutionality of its race-based program, and nowhere suggests that if this litigation is resolved in its favor it will not resume using race to assign students." *Id.* In contrast, here Executive Constantine has abandoned the challenged policy, made no effort to defend its legitimacy before this court or the trial court, and expressly stated he "has no plans to re-adopt this provision." Appellant King County's Opening Br. at 67. There being no evidence in the record suggesting Executive Constantine is misleading the court or otherwise engaging in gamesmanship, we hold this issue is moot.

Executive Constantine is also correct that the recent passage of King County Charter Amendment 1 moots the Law Enforcement Parties' challenge to Executive Constantine's authority to conduct inquests into deaths involving law enforcement officers other than King County deputy sheriffs. King County Charter Amendment 1 amends King County Charter § 895. That section formerly provided that an "inquest shall be held to investigate the causes and circumstances of any death involving a member of *the* law enforcement agency of the county," but it now

14

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

provides that an "inquest shall be held to investigate . . . any death where an action, decision or possible failure to offer the appropriate care by a member of *any* law enforcement agency might have contributed to an individual's death." King County Ordinance 19116 (June 23, 2020) (emphasis added). This new language plainly authorizes the Executive to conduct inquests into deaths involving all law enforcement officers in King County, not just those within the King County Sheriff's Office. *Id.* Accordingly, we hold this issue is also moot.

Having dispensed with the unavailing justiciability issues, we turn to the merits of the Families' and the Law Enforcement Parties' challenges to the executive orders.

I.     The Executive Has Authority To Establish Procedures for Coroner's Inquests by Executive Order Consistent with State Law

A coroner's inquest is a death investigation facilitated by the coroner and decided by a jury. *BNSF*, 192 Wn.2d at 837-38. "'[T]he purpose of a coroner's inquest is to determine who died, what was the cause of death, and what were the circumstances surrounding the death, including the identification of any actors who may be criminally liable for the death.'" *Id.* (alteration in original) (quoting *Carrick v. Locke*, 125 Wn.2d 129, 133, 882 P.2d 173 (1994)). Coroner's inquests are governed by the Coroner's Act, which has remained largely unaltered since its

15

adoption in the original territorial laws of Washington. *Compare* LAWS OF 1854, §§ 1-21, at 435, *with* ch. 36.24 RCW.

The Coroner's Act provides a basic framework for conducting inquests, with only a few mandatory duties to be performed by either the coroner or the inquest jury. The coroner must (1) request jurors from the superior court, RCW 36.24.020, (2) administer an oath to the inquest jury, .040, and (3) summon and examine any witness with knowledge of the facts surrounding the death under investigation, .050. The inquest jury must (1) inquire into the circumstances surrounding the death, RCW 36.24.040, and (2) render a verdict setting out who was killed, when, where, how, by whom, and whether that killing was "by criminal means," .070.

If the inquest jury concludes the death was caused by homicide, the Coroner's Act requires the coroner to take two more steps. The coroner must reduce the inquest proceedings to writing and deliver that written record to the clerk of the county superior court. RCW 36.24.080. Then, depending on whether the suspected killer is under arrest or at large, the coroner must either (a) deliver the inquisition record to the judge before whom the suspect will appear, RCW 36.24.090, or (b) deliver the inquisition record to the county prosecuting attorney for a determination whether the suspect should be charged, .100.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Apart from these few mandatory duties, the Coroner's Act gives the coroner discretion to determine when and how to conduct the inquest. *See, e.g.*, RCW 36.24.020 ("Any coroner, in his or her discretion, may hold an inquest . . . ."; "The coroner may adjourn the inquest from time to time as he or she may deem necessary."), .060 ("The coroner may summon a surgeon or physician to inspect the body . . . ."). The Coroner's Act does not specify who may participate as a party to the inquest, what evidence may be presented, or how the relevance of evidence should be evaluated. It does not limit the number or type of witnesses, restrict the evidence or issues the inquest jury may consider, or prohibit the coroner from opening inquest proceedings to the media and the public.

The King County Code vests the inquest functions of the coroner in the Executive but provides no further detail about how the Executive should carry out those functions. KING COUNTY CODE (KCC) 2.35A.090(B).[2] Since at least 1985, the Executive has built on the Coroner's Act's basic inquest framework by promulgating executive orders establishing policies and procedures for the conduct of inquests. Historically, those executive orders have specified which parties may participate, allowed media to film and record inquest proceedings, established that

---

[2] The King County medical examiner performs all other coroner functions, including autopsies and other forensic investigations into unnatural deaths. *See generally* KCC 2.35A.090.

17

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No.
98985-1

the Rules of Evidence apply, permitted cross-examination of witnesses, mandated

the exchange of discovery, provided for prehearing party conferences, and otherwise

created the ground rules for conducting effective inquests.  This court has recognized

the Executive's authority to issue executive orders establishing policies and

procedures for coroner's inquests as necessary to fill "gaps in the statute," so long

as those orders "do not create any direct conflict" with the Coroner's Act.  *Carrick*,

125 Wn.2d at 144.  Today, we reaffirm that authority.

The Executive is charged with "execut[ing] and enforc[ing] all ordinances and

state statutes within the county."  KING COUNTY CHARTER § 320.20.  "Executive

officers do have some measure of constitutionally protected discretion in how they

carry out that responsibility."  *In re Recall of White*, 196 Wn.2d 492, 503 n.4, 474

P.3d 1032 (2020) (citing *State v. Rice*, 174 Wn.2d 884, 889, 279 P.3d 849 (2012)).

When the Executive conducts a coroner's inquest, that discretion necessarily

includes the ability to determine the details of how that inquest will be conducted.

*Carrick*, 125 Wn.2d at 144.  So long as there is no "direct and irreconcilable conflict

between the statute and the [e]xecutive [o]rder," the Executive may establish policies

and procedures for conducting coroner's inquests in King County.  *Id.*[3]

---

[3] The parties dedicate much of their briefing to whether King County Charter § 320.20
effectively vests all executive powers in the Executive or merely establishes a particular
form of government.  At issue is the interpretation of Wash. Const. art. XI, § 4, which vests
all general law powers "in the legislative authority of the county unless expressly vested in

18

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

Therefore, to prevail in their challenges to the executive orders, the Families and the Law Enforcement Parties must show the challenged provisions conflict with some provision of the Coroner's Act. We address the Families' claims first, as they are dispositive of some of the Law Enforcement Parties' arguments.

## A. The Families Are Entitled to Writs of Mandamus to Comply with the Coroner's Act

A writ of mandamus is an extraordinary remedy that commands a government official to perform a mandatory, nondiscretionary duty required by law. *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994). To obtain a writ of mandamus, petitioners must show (1) the government official has a clear duty to act, RCW 7.16.160, (2) there is "no plain, speedy and adequate remedy in the ordinary course of law," and (3) that petitioners are "beneficially interested," .170. The Families have satisfied their burden and the writs should issue.

### 1. The Coroner Has a Clear Duty to Facilitate the Performance of the Inquest Jury's Duties

The coroner's role in inquests is to facilitate proceedings so the inquest jury can fully investigate the death in question. *BNSF*, 192 Wn.2d at 837 ("A coroner's inquest is a proceeding in which a jury, instead of the coroner, determines the cause

---

specific officers by the charter." We need not—and therefore do not—address these broad constitutional questions in resolving the issues before us today.

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of death of an individual."). The Coroner's Act does not grant the coroner authority to circumvent or limit the jury's performance of its duties. Instead, the Coroner's Act commands the coroner to help seat the inquest jury and swear it in, enable the presentation of evidence and witness testimony the jury wants to examine, and relay the jury's verdict to other government officials as necessary. RCW 36.24.020, .040, .050, .080-.100. Implicit in this structure is the coroner's mandatory duty to facilitate the inquest jury's performance of its mandatory duties.

The most direct example of the coroner's duty to facilitate the jury's inquiry is in the production and examination of evidence. The jury swears to "inquire who the person was, and when, where, and by what means he or she came to his or her death, and into the circumstances attending his or her death." RCW 36.24.040. But the jury itself has no power to compel the production of evidence necessary to inform that inquiry. Instead, it is the coroner who summons and, if necessary, subpoenas witnesses and evidence to facilitate that inquiry. RCW 36.24.050.

Similarly, the Coroner's Act compels the coroner to facilitate the jury's duty to issue a verdict setting forth the essential details of the circumstances attending the death being investigated. RCW 36.24.070. The verdict must set forth the identity of the decedent, when and where they were killed, and the means by which they were killed. *Id.* If those means were criminal, the Coroner's Act requires the inquest jury

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

name "who is guilty thereof, if known." *Id.* But the jury has no specialized knowledge about what actions are or are not criminal. The coroner facilitates the jury's verdict by submitting questions the jury must answer and providing written instructions for how to answer each question.

Here, the Families argue the challenged executive orders block Administrator Spearman from performing two key duties to facilitate the inquest jury's duties. They petition for writs of mandamus to compel Executive Constantine and Administrator Spearman to alter the procedures laid out in the challenged executive orders to allow the inquest jury to fully comply with the commands of the Coroner's Act.

    a. The Coroner Must Summon and Examine Every Person They or Any Member of the Inquest Jury Believes Has Relevant Evidence[4]

RCW 36.24.050 contains one of the mandatory duties in the Coroner's Act: "The coroner must summon and examine as witnesses, on oath administered by the coroner, every person, who, in his or her opinion or that of any of the jury, has any knowledge of the facts." Note there are two duties set out by that provision: a duty

---

[4] Executive Constantine and Administrator Spearman argue this issue is moot because the 2020 EO struck the language barring the issuance of subpoenas to the involved officers. But because the Butts and Lyles Families also seek a writ compelling Administrator Spearman to issue the subpoenas and compel the involved officers' testimony, the issue is not moot.

21

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

to summon and a duty to examine. RCW 36.24.050 also empowers the coroner to issue subpoenas to compel reluctant witnesses to attend and be examined. While the statute provides that the "coroner *may* issue subpoenas," this language cannot be read in context as leaving the issuance of subpoenas to the coroner's discretion. RCW 36.24.050. Rather, the coroner has a duty to "examine as witnesses . . . every person" with relevant testimony. *Id.* Once the coroner or any member of the inquest jury identifies a person as possibly having "any knowledge of the facts," the coroner must examine that person as a witness. *Id.* That duty exists whether a prospective witness voluntarily complies with a summons or must be compelled to attend by subpoena. Accordingly, the coroner may not refuse—and an executive order may not prevent the coroner from using their authority—to compel the attendance of any person who the coroner or any inquest juror believes has "any knowledge of the facts" relevant to the death being investigated. *Id.*

The law enforcement officers involved in the killings of Butts and Lyles have firsthand knowledge of the facts leading to those shootings and are therefore within the universe of witnesses the coroner must examine. *See* CP at 185 (prehearing conference order from Administrator Spearman stating, "It is critical to a full, fair and transparent investigation that the panel hear from the Involved Officers regarding the events that occurred resulting in Mr. Butts' death.") Administrator

22

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

Spearman has a clear duty to issue subpoenas to those officers compelling their attendance and testimony so he may examine them in accordance with RCW 36.24.050.

    b.  The Coroner Must Permit the Inquest Jury To Determine Whether the Means by Which a Person Was Killed Were Criminal

The 2020 EO commands the inquest administrator to instruct the inquest jury "that it may not comment on fault . . . such as . . . the criminal or civil liability of a person." CP at 1572. The Obet and Lyles Families argue this command conflicts with the inquest administrator's duty to facilitate the jury's ability to render a complete verdict as required by the Coroner's Act. We agree.

RCW 36.24.070 commands the jury to issue a verdict identifying, among other things, the means by which a person was killed. If those means were criminal, the statute further commands the jury to identify "who is guilty thereof, if known." RCW 36.24.070. Implicit in this combination of commands is that the jury must determine whether the means by which someone was killed was, in fact, criminal.[5]

---

[5] The Law Enforcement Parties argue the inquest jury cannot be allowed to determine issues of criminal liability because an inquest is not a criminal trial. Not only is this argument contrary to the clear commands of RCW 36.24.070, it also misunderstands the purpose and nature of the criminal means question. "A coroner's inquest is not a culpability-finding proceeding," so the inquest jury's verdict is not a binding adjudication of criminal guilt. *State v. Ogle*, 78 Wn.2d 86, 88, 469 P.2d 918 (1970). Rather, an inquest is one of four "established, recognized and legally permissible methods for determining the existence of probable cause." *State v. Jefferson*, 79 Wn.2d 345, 347, 485 P.2d 77 (1971). Consistent with this purpose, the inquest jury's verdict is a determination whether probable

23

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

This implicit requirement is further demonstrated by the fact that other mandatory duties are triggered by the jury's finding that a person was killed by criminal means. *See, e.g.*, RCW 36.24.100 ("If the jury finds that the person was killed and the party committing the homicide is ascertained by the inquisition, but is not in custody, the coroner must deliver the findings . . . to the prosecuting attorney."). If the inquest jury is not permitted to determine whether the means by which someone was killed were criminal, neither the jury nor Administrator Spearman will be able to fulfill their mandatory duties.

Moreover, the coroner's inquests into the deaths of Obet and Lyles are being conducted pursuant to the King County Charter's requirement that such inquests be held "where an action, decision or possible failure to offer the appropriate care by a member of any law enforcement agency might have contributed to an individual's death." KING COUNTY CHARTER § 895. Both Obet and Lyles were killed by gunshots fired by law enforcement officers. Their inquest juries will know from the

---

cause exists to arrest and charge a person who allegedly committed homicide. *See* RCW 36.24.100. Until 2016, the coroner had a mandatory duty to issue an arrest warrant for the accused whenever the inquest jury found the death in question was the result of homicide. *See* LAWS OF 2016, ch. 186 (replacing coroner's duty to issue an arrest warrant with a duty to deliver the jury's findings and all inquest materials to the prosecuting attorney, who decides whether to seek any arrest warrant and pursue criminal charges against the accused). That coroners no longer possess the authority to issue arrest warrants does not change the nature of the inquest jury's verdict—it remains a type of probable cause determination.

24

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No.
98985-1

outset the identities of the decedents, when, where, and by what means they were

killed, as well as the identity of the officers who killed them.  The sole remaining

question for the inquest juries is whether the means by which these people were

killed were criminal in nature.  RCW 36.24.070.  The Coroner's Act requires that

juries be allowed to answer that question whenever possible.

The Obet and Lyles Families seek a writ of mandamus compelling Executive

Constantine and Administrator Spearman "to include within the scope of the inquest

the question of whether or not the killing[s of Obet and Lyles were] with criminal

means."  CP at 1 (emphasis omitted), 1164-65.  We hold Executive Constantine and

Administrator Spearman have a duty to submit that question to the inquest jury so

that the jury and Administrator Spearman can fulfill their mandatory duties under

the Coroner's Act.

> 2.  The Families Have No Plain, Speedy, or Adequate Remedy Other
>     Than Extraordinary Writs

Washington courts have recognized that because "decisions surrounding

coroners' inquests may not be directly appealed or set aside by the court," an

extraordinary writ is an appropriate remedy when a person seeks to challenge the

proceedings of an inquest.  *BNSF*, 192 Wn.2d at 847 (affirming issuance of writ of

prohibition).  Even as parties to the inquests, the Families do not have any ability to

appeal or otherwise challenge Executive Constantine and Administrator Spearman's

25

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

decisions not to comply with their duties under the Coroner's Act. *In re Inquest into Death of Boston*, 112 Wn. App. 114, 117, 47 P.3d 956 (2002) (holding superior court lacked jurisdiction to hear direct appeal from coroner inquest proceeding into shooting death of armed robbery suspect). Declaratory judgment is likewise unavailable to the Families because—unlike the cities and the King County Sheriff's Office, who show economic injuries stemming from the inquest proceedings themselves—the Families cannot show the inquest process causes them to suffer any cognizable injury in fact, economic or otherwise. *See Grant County*, 150 Wn.2d at 802. The Families have demonstrated that they have "no plain, speedy and adequate remedy in the ordinary course of law" and therefore satisfy the second element of the mandamus test. RCW 7.16.170.

3. The Families Are Beneficially Interested and Therefore Have Standing To Bring Writs of Mandamus

The requirement that a party seeking a writ of mandamus must be beneficially interested is a simple standard: "all that must be shown is that the party has an interest in the matter beyond that of other citizens." *RPECW*, 148 Wn.2d at 620. The Families argue that as parties to the inquest and as relatives of the individuals killed by law enforcement officers, they have emotional and reputational interests in the conduct of these inquests beyond the public's general interest that inquests be conducted fairly. The Families point to specific rules in King County that, they say,

26

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No.
98985-1

demonstrate families' additional interests in how these inquests are conducted. They
highlight that the families of people killed by law enforcement have had the right to
participate as parties in coroner's inquests in King County since at least 1985. They
also point out that families' rights to inquest representation at public expense has
been deemed "so foundational, that the County has moved to enshrine it in the
County Charter." Family of Charleena Lyles's Opening and Resp. Br. at 33 (citing
King County Ordinance 19116).

Executive Constantine replies with unpersuasive authorities. First, Executive
Constantine points to a decision of the Pennsylvania appellate court holding a father
was not beneficially interested in the coroner's decision whether to hold an inquest
into his son's death because "the discretion of the coroner whether or not to conduct
an inquest is not a precipitating factor of the emotional trauma of the decedent's
death." *Nader v. Hughes*, 164 Pa. Commw. Ct. 434, 446, 643 A.2d 747 (1994).
However, the Families here do not claim their emotional and reputational harms are
due solely to their relatives' deaths. Executive Constantine's orders and
Administrator Spearman's refusal to subpoena the involved officers and put the
criminal means question to the jury constitutes a distinct harm, denying the Families
the opportunity to fully investigate the deaths of their relatives during the inquest
process.

27

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

Executive Constantine relies on a Washington Court of Appeals case that held a family's interest in a coroner's inquest is more like the public's interest than the involved officers' interest. *Miranda v. Sims*, 98 Wn. App. 898, 903, 991 P.2d 681 (2000). But that decision did not concern a petition for an extraordinary writ; it involved an equal protection issue. *Id.* at 908 ("[T]o show a violation of the [Equal Protection Clause], a party 'must first establish that the challenged act treats unequally two similarly situated classes of people.'" (internal quotation marks omitted) (quoting *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 635, 911 P.2d 1319 (1996))). The Court of Appeals reasoned that the family was not similarly situated with law enforcement officers involved in the death under investigation, so the county's decision to provide officers with representation did not require it to likewise provide the families with representation. *Id.* at 909. That equal protection question is distinct from the question whether the Families here have a greater interest than the general public in the procedures by which the inquests into their relatives' deaths are held.

We conclude that the Families are beneficially interested in the conduct of coroner's inquests. The inquest process is integral to the Families' deeply personal interest in seeking justice on behalf of their family members who have been killed by law enforcement officers. The Families' position here is similar to that of crime

28

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

victims, who have significant rights in criminal proceedings because their interests in seeking justice exceeds that of any other citizen. *See* WASH. CONST. art. I, § 35. Just as Washington law recognizes victims' superior interests because of "the severe and detrimental impact of crime on victims," RCW 7.69.010, we recognize the Families' special interests because of the severe and detrimental impact of police killings on the families of those slain by law enforcement. The Families' interest in seeking justice on behalf of their relatives far exceeds the interest of any other citizen in coroner's inquests.

Because the Families have satisfied all three elements of our test for mandamus, we direct the superior court to grant the Families' petitions and issue the writs of mandamus on remand.

B. The Coroner's Act Grants Coroners Broad—but Not Unlimited—
   Discretion To Determine the Procedural Details for Conducting Inquests

We turn now to the Law Enforcement Parties' arguments that various provisions of the challenged executive orders conflict with the requirements of state law. As explained above, the Coroner's Act provides a basic framework for conducting inquests and relies on the coroner's discretion to determine the procedural details that enable the inquest to satisfy all the requirements of ch. 36.24 RCW. In *Carrick*, this court upheld an earlier executive order from the Executive, recognizing the Executive has the authority to issue such orders as necessary to fill

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

"gaps in the statute," so long as they "do not create any direct conflict" with the Coroner's Act. 125 Wn.2d at 144. The Law Enforcement Parties challenge several provisions of the 2018, 2019, and 2020 EOs, arguing they conflict with the spirit and letter of the Coroner's Act. We analyze each in turn to determine whether the challenged provisions are in harmony with state law.

### 1. Coroner's Inquests May Include Prehearing Discovery[6]

The Law Enforcement Parties first argue that coroner's inquests may not involve discovery before the inquest jury is empaneled. We disagree.

The 2020 EO—like predecessor orders dating back to 1985—provides for a series of prehearing conferences in which, among other things, the participating parties exchange discovery. Prehearing discovery facilitates the inquest jury's work by allowing the parties and inquest administrator the opportunity to resolve evidentiary disputes—including by allowing *in camera* review and protective orders for confidential materials—before evidence is presented to the inquest jury. That facilitation is consistent with the role of the coroner in the inquest process; certainly, nothing in the Coroner's Act forbids prehearing discovery. As the

---

[6] The parties alternatively refer to these and other procedures as "pre-hearing" and "pre-inquest." But all the procedures in question occurred after Executive Constantine requested jurors from the superior court, and those requests officially began the inquests. *See* CP at 1555, 1560, 1557; *BNSF*, 192 Wn.2d at 838. Therefore, these proceedings are "pre-hearing" but not "pre-inquest." We refer to them accordingly.

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No.
98985-1

Executive notes, the plaintiffs in *Carrick* specifically challenged the discovery

provisions in the 1990 executive order on inquest procedures, but this court

rejected those arguments.  *See* Resp't's Answering Br. (Don Carrick), No. 61542-

0, at 32-35; *Carrick*, 125 Wn.2d at 143-44.  We reaffirm that decision and hold

coroner's inquests may include prehearing discovery.

### 2.  The Coroner May Initiate Subpoenas To Compel Prehearing Discovery, but Only through the Superior Court

The 2020 EO provides that the inquest administrator may initiate discovery

subpoenas for witnesses and records by requesting the prosecuting attorney issue

such subpoenas.   Executive Constantine argues RCW 36.24.200—which the

legislature passed after our decision in *BNSF*[7]—"grant[s] the coroner the right to

issue subpoenas."  Appellant King County's Opening Br. at 54; RCW 36.24.200 ("In

addition to any of its existing authorities, the coroner may, in the course of an active

or ongoing death investigation, request that the superior court issue subpoenas for

production of documents and other records . . . and permit inspection [of those

---

[7] There, we held that the subpoena authority in RCW 36.24.050 "does not allow a coroner to demand to see the subpoenaed evidence prior to the inquest" and "does not allow preinquest inspection of the evidence," barring the use of those subpoenas to compel discovery.  *BNSF*, 192 Wn.2d at 845.  RCW 36.24.200's additional authorization of subpoenas to produce evidence "at a specified time and place" permits the coroner to receive, inspect, and make rulings about the admissibility of subpoenaed discovery at prehearing conferences.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

records] . . . at a specified time and place."). The Law Enforcement Parties counter with two arguments.

First, they argue the new subpoena authority in RCW 36.24.200 does not apply to coroner's inquests because the statute refers to "'active or ongoing death investigation[s].'" Br. of Resp'ts Cities & King County Sheriff's Office at 24-31 (quoting RCW 36.24.200) They point out that the King County Code vests all the coroner's duties other than conducting inquests in the King County medical examiner. KCC 2.35A.090(B). Those duties include "ensur[ing] investigation into the deaths of persons so specified by chapter 68.50 RCW." KCC 2.35A.090(C). So, they reason, the new authority for coroners to issue subpoenas in death investigations is held by the King County medical examiner, not the Executive.

That argument is unavailing. By definition, a coroner's inquest is a type of death investigation. *See* BLACK'S LAW DICTIONARY 946 (11th ed. 2019) (defining "inquest" as "[a]n inquiry by a coroner or medical examiner, sometimes with the aid of a jury, into the manner of death of a person who has died under suspicious circumstances"). Nothing in the Coroner's Act suggests a coroner's inquest is not a death investigation. To the contrary, the entire "'purpose of a coroner's inquest is to determine who died, what was the cause of death, and what were the circumstances surrounding the death, including the identification of any actors who

may be criminally liable for the death.'" *BNSF*, 192 Wn.2d at 837-38 (quoting *Carrick*, 125 Wn.2d at 133). And the legislature specifically added this subpoena authority to ch. 36.24 RCW (governing inquests) rather than ch. 68.50 RCW (governing treatment of human remains, including autopsies and postmortems). *See* LAWS OF 2019, ch. 237, § 1 ("A new section is added to chapter 36.24 RCW to read as follows . . . ."). The plain language of RCW 36.24.200 grants coroners additional subpoena authority that may be used to compel prehearing discovery in inquests.

The Law Enforcement Parties' second argument, however, is correct. They point out that RCW 36.24.200 requires the coroner to request that the superior court issue subpoenas, while the challenged executive orders direct the inquest administrator to request subpoenas from the prosecuting attorney. Executive Constantine "acknowledges that the procedures in the 2020 EO for actually issuing subpoenas may require further refinement . . . [because] the process must comply with RCW 36.24.200." Appellant King County's Reply Br. at 35 n. 19.

We hold that the inquest administrator has authority to request subpoenas to compel the production of discovery consistent with RCW 36.24.200, and thus only from the superior court.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No.
98985-1

### 3. Coroner's Inquests May Inquire into Relevant Law Enforcement Policies and Training

The Coroner's Act requires inquest jurors to take an oath pledging to "inquire who the person was, and when, where, and by what means he or she came to his or her death, and into the circumstances attending his or her death, and to render a true verdict therein." RCW 36.24.040. The statute does not define what is included in "the circumstances attending" a death; as is typical of the Coroner's Act, it leaves that to the discretion of the coroner. *Id.* Executive Constantine persuasively argues, "There is no logical argument that excludes an officer's policy and training from the facts or circumstances that resulted in the death, especially when policy and training serve to inform an officer's response to potential threats." Appellant King County's Opening Br. at 59. The Law Enforcement Parties claim that coroner's inquests can inquire into only the narrow questions the jury's verdict must answer and "[w]hether an officer acted in compliance with policy is not within that factual panoply." Resp't Individual Law Enf't Officers' Resp. Br. at 43. But, as explained above, a coroner's inquest is not so cabined.

The inquest jury swears to inquire into "the circumstances attending [the] death" under investigation *in addition* to "who the person was, and when, where, and by what means" the person died—in other words, in addition to most of the questions answered in the jury's verdict. RCW 36.24.040. The only remaining

34

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No.
98985-1

questions for the jury's verdict are whether those means were criminal and who is

guilty thereof, which suggests the inquiry into attendant circumstances must be

broad enough to allow the jury to determine whether the killing was a crime. RCW

36.24.070. In officer-involved shootings like the three at issue here, whether the

officers complied with training and policy may be relevant to whether the officers'

actions were criminal. Because an inquiry into policy and training aligns with the

purposes and provisions of the Coroner's Act, we hold the Executive has the

authority to make that inquiry part of the coroner's inquest process in King County.

4. Coroner's Inquests May Include Testimony and Evidence from
   Outside Expert Witnesses

The Coroner's Act gives the coroner and the inquest jury broad authority to

determine what testimony and evidence the jury will hear. RCW 36.24.050 ("The

coroner must summon and examine as witnesses, on oath administered by the

coroner, *every person*, who, in his or her opinion or that of any of the jury, *has any*

*knowledge of the facts*." (emphasis added)). As noted, the Coroner's Act also

commands the jury to determine the means by which the decedent was killed and, if

by criminal means, who is guilty thereof. RCW 36.24.070. This inquiry

encompasses a determination of whether the means by which the decedent was killed

was criminal. *Id.* The jury cannot make that determination without evidence

pertaining to criminal liability, and the Coroner's Act explicitly grants the coroner

35

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No.
98985-1

and inquest jurors the power to summon and examine every person they believe has any knowledge of relevant facts. *Id.* Accordingly, we hold that coroner's inquests may include testimony and evidence from outside expert witnesses as the coroner or inquest jury deem relevant.

### 5. The Coroner May Make Inquest Proceedings Accessible to the Public, Including by Livestreaming

The 2020 EO directs the inquest administrator to "make the proceedings available to the public and to the media" in a manner consistent with open courts principles and General Rule 16. CP at 1571. Administrator Spearman issued orders in the Butts and Lyles inquests permitting media access, livestreaming, filming, voice recording, and photography, with some exceptions for juror and party privacy. CP at 1869-71, 1207. The Coroner's Act is silent as to media access but requires that inquests be held in "a courtroom or comparable public venue." RCW 36.24.020. This requirement underscores that providing for public access is consistent with the purposes of the act. At the very least, the public access provided in the 2020 EO and in Administrator Spearman's orders does not conflict with any aspect of the Coroner's Act, and reflects a proper exercise of the coroner's authority.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

### 6.  The Coroner May Not Preemptively Bar the Inquest Jury from Considering Particular Evidence or Testimony

The coroner and inquest jury share equal authority to determine what witnesses have relevant knowledge of the facts regarding the circumstances attending a person's death.  RCW 36.24.050 ("The coroner must summon and examine as witnesses, on oath administered by the coroner, every person, who, *in his or her opinion or that of any of the jury*, has any knowledge of the facts." (emphasis added)).  Because the inquest jury has commensurate authority to decide what witnesses and evidence are relevant to its inquiry, the coroner cannot preemptively exempt or bar particular evidence or testimony from the jury's consideration.

The coroner may, after the jury has asked to summon a witness, decide on a case-by-case basis that the requested testimony or evidence is irrelevant or unfairly prejudicial, cumulative or unhelpful to the jury's inquiry under the rules of evidence. Indeed, the 2020 EO—like previous executive orders governing inquests in King County—provides that the Rules of Evidence apply to inquest proceedings.  But the 2020 EO's preemptive prohibition on any inquest jury's ability to hear testimony from the chief law enforcement officer regarding the involved officers' compliance with training and policy impermissibly infringes on the jury's authority under the Coroner's Act to seek the evidence it needs.  So too does the 2020 EO's categorical

37

prohibition on the jury's ability to hear testimony from the involved officers regarding their mental state at the time of the killings. We therefore strike the 2020 EO's preemptive prohibition of and limitation on the testimony of potential witnesses, including the chief law enforcement officer.

II.     The Challenged Executive Orders Do Not Violate the Appearance of Fairness Doctrine

Aside from their arguments that aspects of the executive orders conflict with the Coroner's Act, the Law Enforcement Parties claim those orders violate the appearance of fairness doctrine. This court originally recognized the appearance of fairness doctrine "to ensure fair hearings by legislative bodies," mainly in the context of land use hearings. *Raynes v. City of Leavenworth*, 118 Wn.2d 237, 245, 821 P.2d 1204 (1992). We established the doctrine in *Smith v. Skagit County*, 75 Wn.2d 715, 743, 453 P.2d 832 (1969), where we voided a planning commission's zoning change because the hearing at issue had "lost one of its most basic requisites—*the appearance of elemental fairness*." The planning commission had "announced at the close of a public meeting that it would go into executive session" but later "invited . . . powerful advocates of the zoning changes to attend and be heard" in that executive session while "deliberately exclud[ing] opponents of the proposed rezoning." *Id.* at 742-43. This court concluded that hearing was "so wanting in apparent fairness as to vitiate the legislation emerging" from it. *Id.* at 743.

38

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No.
98985-1

More recently, we have applied the doctrine to quasi-judicial proceedings in two circumstances: "'(1) when an agency has employed procedures that created the appearance of unfairness and (2) when one or more acting members of the decisionmaking bodies have apparent conflicts of interest creating an appearance of unfairness or partiality.'" *In re Disciplinary Proceeding Against Petersen*, 180 Wn.2d 768, 785-86, 329 P.3d 853 (2014) (quoting *City of Hoquiam v. Pub. Emp't Relations Comm'n*, 97 Wn.2d 481, 488, 646 P.2d 129 (1982) (*PERC*)). The doctrine "only applies to *judicial and quasi-judicial decision makers*." *State v. Finch*, 137 Wn.2d 792, 808, 975 P.2d 967 (1999) (plurality opinion). "Whether a decision is quasi-judicial in nature depends on whether the decision was adjudicatory in nature." *Id.* at 809.[8]

---

[8]  In *Petersen* we noted, "The doctrine does not apply to executive functions such as prosecutorial inquests or coroner inquests." 180 Wn.2d at 786 n.17 (citing *Finch*, 137 Wn.2d at 809-10; *Carrick*, 125 Wn.2d at 140-43). Appellants rely on this language to argue the doctrine is wholly inapplicable to the King County coroner inquests at issue in this case. Appellant King County's Opening Br. at 28; Appellant Inquest Administrator Spearman's Opening Br. at 3, 22. However, our note in *Petersen* should not be read so broadly; it is more accurately read as indicating the appearance of fairness doctrine does not apply to *prosecutors' actions* in inquest proceedings. *See Petersen*, 180 Wn.2d at 786 ("Though [the commissioner's disciplinary] inquest may be characterized *as prosecutorial and therefore exempt* from the appearance of fairness doctrine, . . . [the inquest nonetheless] bore many hallmarks of a . . . quasi-judicial proceeding." (emphasis added) (footnote omitted)). That understanding is consistent with our holding in *Carrick*, which declined to apply the doctrine to prosecutors because they were "not the decisionmaker at the inquest." 125 Wn.2d at 143 n.8. We need not decide today whether the appearance of fairness doctrine generally applies to coroner's inquests because, as explained in the main text, the Law Enforcement Parties have not established any violation here.

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

The first circumstance is essentially an extension of the original appearance of fairness doctrine to other, nonlegislative government bodies. In the second circumstance—where a decision-maker has an apparent conflict of interest—we have invalidated decisions because biased individuals participated in the decision-making process. *See PERC*, 97 Wn.2d at 488-89 (collecting cases). But "[w]e presume that judicial hearings and judges are fair." *Petersen*, 180 Wn.2d at 787 (citing *In re Disciplinary Proceeding Against King*, 168 Wn.2d 888, 904, 232 P.3d 1095 (2010)). And absent "evidence of actual or potential bias, an appearance of fairness claim cannot succeed and is without merit." *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172 (1992); *see also Petersen*, 180 Wn.2d at 786-87 (declining to apply the doctrine where the petitioner failed to present material evidence suggesting impropriety).

As to the first category, the Law Enforcement Parties allege an appearance of unfairness based on the "back room method by which the rules [governing coroner's inquests] were drafted." Br. of Resp'ts Cities & King County Sheriff's Office Br. at 33 (internal quotation marks omitted). They primarily object to the fact that "an attorney for one of the families"—who was part of the coalition of law enforcement and community organizations that drafted a compromise proposal based off the IRC's work—"was the principal author of the executive order." *Id.* at 34 n.17. But

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that assertion is not supported by the record. The attorney in question shared the coalition's draft compromise proposal with the Executive Constantine's office, and Executive Constantine incorporated some of the coalition's proposals alongside some of the IRC's proposals in his executive orders. Representatives from law enforcement agencies were also involved in the coalition and IRC's work. The evidence in the record is insufficient to find Executive Constantine's method of drafting the challenged executive orders, including Executive Constantine's acceptance of a few provisions of the draft compromise executive order, violated the appearance of fairness doctrine. There is no evidence here that Executive Constantine "deliberately excluded" law enforcement interests from or otherwise demonstrated bias against law enforcement in the executive orders reforming the procedures for conducting coroner's inquests. *Smith*, 75 Wn.2d at 743.

Nor have the Law Enforcement Parties presented evidence of any actual or potential bias on the part of any decision-maker, so their claims under the appearance of fairness doctrine cannot succeed. They mainly argue Executive Constantine's delegation of his inquest duties to an at-will employee like the inquest administrator suggests potential bias in light of our decision in *Carrick*. But there are two flaws with that argument.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

First, the court in *Carrick* was addressing a factual scenario not at issue here. At the time of the events in *Carrick*, the Executive oversaw both the sheriff's office and the inquest process. So, "at least in the case of an inquest into a death in which county police are involved," we suggested the Executive, "who is ultimately responsible for police conduct," delegate his inquest authority to "an official exercising a high degree of independence." *Carrick*, 125 Wn.2d at 142-43. But the Executive no longer oversees the sheriff's office and is not ultimately responsible for police conduct, so there is no more tension between the Executive's inquest and oversight authorities. Our expressed concern in *Carrick*—which at any rate was mere dicta—does not apply to the current operational structure.[9]

Second, the Law Enforcement Parties have not presented sufficient evidence to show that the at-will nature of the inquest administrator's employment creates the appearance of unfairness. The inquest administrators hired by King County are all former judges, whose independence and judgment are well established. Beyond that, the logic of this argument fails at a basic level. The Law Enforcement Parties argue the Executive cannot delegate inquest duties to at-will employees because the

---

[9] King County Charter Amendments 5 and 6, which voters approved in November 2020, provide that the King County sheriff will revert to an appointed position in 2022 and that the King County Council, not the Executive, will establish policies and procedures governing the King County Sheriff's Office by ordinance.

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No.
98985-1

Executive might improperly influence such employees to conduct inquests in accordance with the Executive's views. But, absent the delegation of authority to an inquest administrator, the Executive would perform the statutory duties of coroner directly, and so directly control the conduct of any inquests. KCC 2.35A.090(B). The Law Enforcement Parties do not argue that the King County Code itself violates the appearance of fairness doctrine by vesting the authority to conduct inquests in the Executive. If the Executive can directly conduct coroner's inquests without violating the doctrine, the Executive can delegate the authority to conduct coroner's inquests to an at-will employee without violating the doctrine. We reject the notion that the at-will employment status of inquest administrators violates the appearance of fairness doctrine.

Finally, we reject the Law Enforcement Parties' argument that Administrator Spearman has demonstrated prejudice by taking positions at odds with the law enforcement officers' positions in this litigation. Administrator Spearman did not launch this litigation, nor does he violate the appearance of fairness doctrine by defending his position against legal challenges. And we presume quasi-judicial decision-makers such as Administrator Spearman act fairly in performing their duties, absent any evidence to the contrary. *Petersen*, 180 Wn.2d at 787. As in *Petersen*, the inability of the Law Enforcement Officers to sufficiently identify

43

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

evidence of bias on behalf of Administrator Spearman is dispositive of their appearance of unfairness claims.

    III.    The Fifth Amendment Does Not Grant Law Enforcement Officers Blanket Immunity from Testifying in Coroner's Inquests

The Law Enforcement Parties argue the executive orders violate the Fifth Amendment rights of the officers involved in the deaths of Butts, Obet, and Lyles. We disagree. U.S. CONST. amend. V.

"The Fifth Amendment privilege permits a person to refuse to testify at a criminal trial, or to refuse to answer official questions asked in any other proceeding, where the answer might tend to incriminate [them] in future criminal proceedings." *King v. Olympic Pipe Line Co.*, 104 Wn. App. 338, 351, 16 P.3d 45 (2000). But "[t]here is no blanket Fifth Amendment right to refuse to answer questions based on an assertion that any and all questions might tend to be incriminatory." *Eastham v. Arndt*, 28 Wn. App. 524, 532, 624 P.2d 1159 (1981). Instead, in noncriminal proceedings like coroner's inquests, the "only way the privilege can be asserted is on a question-by-question basis." *Jane Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000); *see also State v. King*, 130 Wn.2d 517, 524, 925 P.2d 606 (1996).

Nothing in the challenged executive orders prevents law enforcement officers from asserting their Fifth Amendment privilege against self-incrimination on a

44

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

question-by-question basis, even when testifying under subpoena. The 2020 EO permits the full participation of counsel for the involved officers, who can help their clients invoke the privilege when appropriate. The officers do not argue they will be unable to do so but nevertheless insist the challenged executive orders force them "to forfeit their constitutional right by pinning on the badge to protect and serve the citizenry." Resp't Individual Law Enf't Officers' Resp. Br. at 31. To the contrary, they retain the unfettered right to invoke their Fifth Amendment privilege when it is actually implicated, and their status as law enforcement officers does not diminish that right.

IV.     The Sixth Amendment Does Not Apply to Coroner's Inquests

We also reject the superior court's conclusion that the challenged executive orders implicate the involved officers' Sixth Amendment right to counsel. The Sixth Amendment does not apply to investigatory proceedings like coroner's inquests; the right to counsel applies only to criminal proceedings and does not attach until "the State initiates adversarial proceedings against a defendant." *State v. Everybodytalksabout*, 161 Wn.2d 702, 707, 166 P.3d 693 (2007). The superior court's conclusion to the contrary is wrong as a matter of law, and no party defends it here.

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

V.      The Pending Inquests Are Timely

Finally, the parties ask us to decide whether some of the pending inquests remain timely.  The Law Enforcement Parties argue RCW 36.24.020 requires that inquests be completed within 18 months of their commencement, effectively creating a sunset provision for coroner's inquests.  Executive Constantine replies that the language in RCW 36.24.020 is meant to command the superior courts to timely provide jurors and facilities for inquests, not to restrict the ability of the coroner to hold inquests.  Regardless of which interpretation of RCW 36.24.020 is correct, the inquests at issue are timely.

Under our decision in *BNSF*, Executive Constantine's 2017 letters requesting judges from the King County District Court did not officially begin any inquests. 192 Wn.2d at 838 ("[T]he coroner must request a jury in order to begin an inquest."). That is why Executive Constantine sent subsequent letters to request inquest jurors from the superior court in the spring and summer of 2019—then commencing the proceedings.  In March 2020, less than a year after the inquests began, the parties agreed to stay all pending inquests during this litigation.  Given the sequence of events, even if RCW 36.24.020 imposes an 18 month window for inquests, the Law Enforcement Parties' claims of untimeliness fail.

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

CONCLUSION

Coroner's inquests are an important feature of state and local law in Washington.  They empower community members to conduct thorough, transparent, and public death investigations, including when individuals like Damarius Butts, Isaiah Obet, and Charleena Lyles are shot and killed by police.  In such instances, coroner's inquests can offer some measure of the accountability necessary to rebuild trust between law enforcement and the communities they serve—but that accountability depends on how coroner's inquests are conducted.

The Executive, acting as coroner, has the authority to establish by executive order procedures for conducting inquests within its jurisdiction.  Those procedures must not conflict with any constitutional, statutory or county-level mandate.  Most provisions of the executive orders challenged here are consistent with constitutional provisions, the Coroner's Act, the King County Charter, and the King County Code, and are therefore valid exercises of the Executive's authority.  But a few of the challenged provisions, which directly conflict with the inquest jury's ability to seek relevant evidence and render a complete verdict under the Coroner's Act, exceed the Executive's lawful authority and are invalid.  Accordingly, we vacate the superior court's order striking down the challenged executive orders and uphold them in part.

47

*Family of Damarius Butts et al. v. King County Exec. Constantine et al.*, No. 98985-1

We direct the superior court to grant the Families' petitions in part and issue the writs of mandamus to (1) compel Administrator Spearman to summon and examine as witnesses the officers involved in the killing of Damarius Butts and the killing of Charleena Lyles and (2) compel Executive Constantine to require that the criminal means question be put to the juries in inquests into deaths involving law enforcement officers. We also grant declaratory judgment in part for the Law Enforcement Parties by invalidating the 2020 EO's preemptive restrictions on the testimony of the chief law enforcement officer and involved officers. We leave intact the other provisions of the executive orders establishing King County inquest procedures, and remand to the superior court for further proceedings consistent with this opinion.

*Family of Damarius Butts, et al. v. King County Exec. Constantine, et al.*, No. 98985-1

Stephens, J.

WE CONCUR:

González, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.